IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2009

**STATE OF TENNESSEE v. ARCHIE RAY MOORE**

**Appeal from the Circuit Court for Lincoln County**
**No. S0600141     Robert Crigler, Judge**

---

**No. M2008-00544-CCA-R3-CD - Filed March 4, 2009**

---

The Defendant, Archie Ray Moore, was convicted of selling .5 grams or more of a substance containing cocaine. The trial court sentenced him as a Range II, multiple offender to nineteen years in the Department of Correction. In this direct appeal, he argues that (1) the State presented evidence insufficient to convict him; and (2) the trial court erred in denying him community corrections and in setting the length of his sentence. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Andrew Jackson Dearing, Shelbyville, Tennessee, for the appellant, Archie Ray Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Charles Crawford, District Attorney General; and Hollyn Hewgley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The events underlying this case occurred on March 22, 2005. On that day, Deputy Billy Ostermann of the Marshall County Sheriff's Department and Special Agent Shane George of the Seventeenth Judicial District Drug Task Force planned to use an undercover confidential informant ("CI") named Anthony Jones to purchase drugs in the Bottoms and West End area of Fayetteville. Deputy Ostermann, the "tech man" on the operation, testified that he and Agent George met Jones at a predetermined location and discussed their plan. Agent George then searched Jones and Jones' vehicle to ensure that he had no drugs, money, or weapons. He did not.

Ostermann then installed video and audio monitors in Jones' vehicle, as well as an audio-only wire on Jones himself. Jones was given five twenty dollar bills with pre-recorded serial numbers. Jones was then instructed to drive around and try to buy crack cocaine. He was not instructed to target any particular person. Jones was a paid CI; Ostermann clarified that the officers of the drug task force always paid CIs less than the value of the drugs being purchased.

Deputy Ostermann stayed behind and monitored Jones' audio in real time. Agent George followed Jones in an undercover police vehicle. Eventually, Ostermann heard a conversation that "without a doubt" sounded like a drug transaction. Jones then returned directly to the predetermined location. Deputy Ostermann turned off the recording equipment and retrieved the resulting audio-visual materials. He gave those materials to Agent George, who labeled them and made his report. Agent George then returned them to Ostermann, who kept them in his custody. At that time, Ostermann reviewed both the video and audio on a portable player with a three-inch video screen. He watched it on a television screen one or two days later. He had previously seen pictures of the Defendant and recognized him as the person the video showed entering Jones' car and engaging in a drug transaction.

Agent George also testified, confirming Deputy Ostermann's testimony regarding the procedures they followed at the predetermined location. He searched Jones' vehicle personally and did not use a drug dog. The search for a seller began at about 2:00 p.m. Agent George followed Jones and visually observed his vehicle, a gold Dodge Omni, as closely and frequently as possible without risking his cover. After about fifteen or twenty minutes, Deputy Ostermann, with whom Agent George maintained radio contact, said that Jones had made contact with a potential seller on Locust Street. Agent George drove to that area. When he arrived, he saw a black male in a green baseball cap and a red and black flannel shirt walking away from Jones' vehicle. Agent George circled around the block. When he returned, he saw the same subject walking back to Jones' vehicle. Deputy Ostermann informed Agent George that the transaction with that subject was unsuccessful: the man was not willing to sell what Jones considered a sufficient amount of crack for the money he offered.

Shortly thereafter, Ostermann told Agent George that Jones was speaking to someone in the West End area. Agent George drove there and saw Jones, still in his vehicle, conversing with someone parked next to him in a white Dodge Aries. The two parted ways without any transaction taking place.

About fifteen to twenty minutes later, Deputy Ostermann told Agent George that a transaction had been completed. Agent George did not see the transaction. He closely followed Jones back to the predetermined location. Once there, he retrieved a small bag of presumptive crack cocaine from Jones' passenger seat. He searched Jones again, confirming that he had no money or drugs on his person. Agent George sealed the presumptive crack cocaine into an evidence bag and later submitted it to his director. The State and the Defendant stipulated to the bag's chain of custody, which included submission to the Tennessee Bureau of Investigation (TBI) for testing.

Jones also testified. He had worked for years as a paid CI in other jurisdictions. He had a criminal record that included a number of convictions for writing bad checks. It also included two convictions for aggravated burglary and two convictions for theft, one in the amount of $1,000 to $10,000, the other in the amount of $10,000 to $60,000. He had never used crack cocaine, but he was a user of powder cocaine and alcohol around March 22, 2005. He had not used either one on that day, however, and claimed not to be addicted to either one at the time.

Jones confirmed Deputy Ostermann and Agent George's testimony regarding the procedures they followed at the predetermined location. He noted that he had never seen the Defendant before and was not directed to attempt to purchase from him.

The State showed the jury the video taken that afternoon. Jones explained the video as it played. Jones refused the first sale he was offered because the amount of crack was too small and to purchase it would have jeopardized his credibility. The man in the white Dodge Aries said, in response to Jones' request for crack, that he was an alcoholic and did not sell drugs.

After a few minutes, Jones asked a third man for crack. This man agreed to sell and told Jones to drive around the block. Jones did so. When he arrived back at the appointed spot, the Defendant opened Jones' passenger door and sat down on the passenger seat. The video showed Jones and the Defendant looking down into the Defendant's hand; Jones testified that he was confirming the quantity of crack. Jones agreed to give the Defendant fifty dollars for the crack in the Defendant's hand and another fifty if the Defendant returned with a similar amount. The Defendant agreed and told Jones to park in a particular place. Jones then gave the Defendant the full $100. The Defendant left, returned a few minutes later, and gave Jones the second portion of crack. Jones placed both portions on his passenger seat and drove back to the predetermined location to meet Deputy Ostermann and Agent George.

TBI Special Agent and forensic scientist Brent Trotter also testified. After being certified as an expert in the field of forensic chemistry, Agent Trotter introduced the lab report he had produced when analyzing the substance purchased from the Defendant. His tests determined it to be .8 grams of a substance containing cocaine.

The Defendant chose not to testify. The jury found him guilty as charged. He now appeals.

## Analysis
### I. Sufficiency of the Evidence
The Defendant first contends that the State offered evidence insufficient to convict him. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn.

2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Tennessee Code Annotated section 39-17-408(b)(4) classifies cocaine as a controlled substance. Section 39-17-417(a)(3) provides that it is an offense for a defendant to knowingly sell a controlled substance. Section 39-17-417(c)(1), the punishment provision, provides that sale of "[c]ocaine . . . is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine."

The Defendant correctly characterizes the evidence against him as "partially circumstantial," but he argues and cites to authority as if the evidence were wholly circumstantial. It is not. The Defendant was convicted primarily by direct evidence. Agent George searched Jones before any transaction took place in order to ensure that Jones was not the source of any controlled substances recovered later. Jones testified that the Defendant sold him crack cocaine. The transaction was videotaped and played for the jury. Agent Trotter tested the substance Jones received and confirmed that it contained cocaine. This evidence was sufficient to support the Defendant's conviction for selling .5 grams or more of a substance containing cocaine beyond a reasonable doubt. This issue is without merit.

## II. Sentencing

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its

reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The Tennessee legislature recently amended several provisions of the Criminal Sentencing Reform Act of 1989, those changes becoming effective June 7, 2005. The Defendant's crimes occurred prior to that date, and he was sentenced after it. As such, the Defendant could have elected to be sentenced under the revised Act by executing a waiver of his ex post facto protections. See Tenn. Pub. Acts ch. 353, § 18. He did not execute such a waiver, however, and thus should have been sentenced under the 2003 codification of the Act. That codification violated the Supreme Court's requirement that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The statutory maximum "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely v. Washington, 542 U.S. 296, 305-306 (2004).

The presentence report in this case indicates that the Defendant is a single male and was fifty years old at the time of sentencing. He dropped out of high school after the tenth grade. Employment, health, and financial information were unavailable because the Defendant refused to fill out his interview form. He has an extensive criminal record that included four previous felonies: an attempted burglary in 1977, two burglaries in 1980, and an aggravated burglary in 1994. He had at least fourteen misdemeanor convictions. He also was found guilty of violating probation seven times between 1999 and 2007.

**A. Denial of Community Corrections**

The Defendant contends that the trial court should have sentenced him to community corrections. A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
> (F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1).

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

The Defendant is not presumptively entitled to an alternative sentence because he was convicted of a Class B felony and was sentenced as a multiple offender. See Tenn. Code Ann. § 40-

35-102(6). The trial court acted well within its discretion in declining to sentence the Defendant to community corrections. This issue is without merit.

### B. Length of Sentence

Because he was convicted of a Class B felony as a Range II, multiple offender, the Defendant was subject to a sentencing range of twelve to twenty years. Tenn. Code Ann. § 40-35-112(b)(2). The trial court sentenced him to nineteen years in the Department of Correction. The Defendant challenges the length of his sentence.

In sentencing the Defendant the trial court used as enhancement factors that the Defendant had "a previous history of criminal convictions and criminal behavior, in addition to those necessary to establish the appropriate range" and had "failed to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(1), (8). The trial court gave "enormous weight" to the Defendant's convictions in addition to the two felonies necessary to establish his range. Because Tennessee Code Annotated section 40-35-114(8), failing to comply with the conditions of a sentence involving release into the community, requires the finding of facts other than a prior conviction, however, the court erred in relying on it when enhancing the Defendant's sentence. See Blakely v. Washington, 542 U.S. 296 (2004); see also State v. Gomez, 239 S.W.3d 733 (Tenn. 2007).

The State correctly notes that the Defendant failed to object to this issue at sentencing, and he did not raise it as an issue in his motion for a new trial. He may therefore have waived the issue. See Tenn. R. App. P. 36(a), Tenn. R. App. P. 3(e). We must treat this issue as waived unless it is deemed to be plain error. Tenn. R. App. P. 52(b). Plain error requires that five factors be established: (1) "the record must clearly establish what happened in the trial court"; (2) "a clear and unequivocal rule of law must have been breached"; (3) "a substantial right of the accused must have been adversely affected"; (4) "the accused did not waive the issue for tactical reasons"; and (5) "consideration of the error is necessary to do substantial justice." State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Issues that rise to the level of plain error lie within the sound discretion of the appellate court and may be considered: (1) to prevent needless litigation; (2) to prevent injury to the interests of the public; and (3) to prevent prejudice to the judicial process, prevent manifest injustice, or to do substantial justice. See Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b); Adkisson, 899 S.W.2d at 638-39.

We decline to find the existence of plain error because consideration of the error is not necessary to do substantial justice. The Defendant's nineteen-year sentence is entirely justified by his extensive history of criminal convictions. We have pointed out that the trial court permissibly put "enormous" weight on the Defendant's prior criminal convictions. In addition to his felony convictions, the Defendant has at least fourteen misdemeanor convictions. Among his misdemeanors are convictions for larceny (in Alabama), driving under the influence, evading arrest, theft, vandalism, casual exchange of cocaine, resisting arrest, and criminal trespass. In our view, these prior convictions support the sentence imposed. Based on our de novo review, we affirm the nineteen-year sentence as ordered by the trial court.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

DAVID H. WELLES, JUDGE